**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **No. 4:18CR00534 DPM** |
| | **)** | |
| **BENNY DON TAYLOR** | **)** | |

**MOTION TO SUPPRESS EVIDENCE**

Benny Don Taylor was arrested in a sting operation for soliciting sex from a minor who was, in fact, an undercover police officer. Taylor's car was searched incident to the arrest. Through his attorneys, J. Blake Hendrix and Annie Depper of Fuqua Campbell, P.A., Taylor moves to suppress the fruits of the vehicle search.

I.

On August 24, 2017, Faulkner County Sheriff's Deputy Chad Meli found an ad on Craigslist from someone seeking sex from a college or high school-aged boy. Meli, posing as a fifteen-year-old boy named Connor Shaw, responded to the ad over Craiglist's email function. The recipient of Meli's email identified himself as "Ben", and they discussed meeting to have sex. Phone numbers were exchanged, and the two continued the conversation by text messages. Arrangements were discussed for the two to meet at a football field at a high school in Conway on August 27, 2019, at 2:00 p.m. "Ben" agreed to bring beer.

On August 27, 2019, several officers staked out the football field. At 1:35 p.m., a white Buick with Texas tags entered the parking lot of the high school. It drove around, exited the parking lot, and re-entered a few minutes later. Officers approached the vehicle and arrested its occupant, Benny Don Taylor. Taylor was removed from the vehicle and placed in handcuffs. He was 78-years old and had a seizure, losing consciousness. The vehicle was searched, and the officers seized three pairs of female underwear, lubricant, and a piece of paper with notes that

included the name and phone number of Meli's nom de plume, and the date, address, and driving directions to the high school.

On October 4, 2018, Taylor was indicted for one count of attempting to persuade, induce, entice, and coerce a minor to engage in sexual activity in violation of 18 U.S.C. §2422(b). He moves to suppress the fruits of the search of the rental vehicle, contending that the warrantless search of the automobile was not justified by any well-defined exception to the warrant requirement.

II.

Searches conducted without a warrant are pre se unreasonable, subject to a few well-established exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)); *United States v. Williams*, 616 F.3d 760 (8th Cir. 2010). Two recognized exceptions are the search-incident-to-arrest exception announced in *Chimel v. California*, 395 U.S. 752 (1960), and the automobile exception announced in *Carroll v. United States*, 267 U.S. 132 (1925). Both were addressed in *Arizona v. Gant*, 556 U.S. 332 (2009). In *Gant*, the Supreme Court considered: 1) whether the police may lawfully search a vehicle without a warrant when the occupant has been removed and has no reasonable access to the interior compartment of the vehicle and 2) whether the circumstances unique to an automobile justify a warrantless search when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle. *Id.* at 336.

A. Search incident to arrest

Gant was suspected of being a drug offender. Officers saw Gant park his vehicle, get out, and shut the door. Gant and the officers met about ten to twelve feet from Gant's car, and Gant

was arrested, handcuffed, and locked in the back seat of a police vehicle. The officers searched Gant's car and found a gun and drugs.

Gant moved to suppress, arguing that the warrantless search of his vehicle was unlawful. Gant argued that, having been handcuffed and locked in the police vehicle, he posed no threat to the officers' safety or could have accessed the vehicle to destroy evidence. *New York v. Belton*, 453 U.S. 454 (1981), Gant argued, limited a search incident to arrest to the area within the arrestee's immediate control, that is, an area "within which he might gain possession of a weapon or destructible evidence." *Id*. at 460, citing *Chimel v. California*, 395 U.S. 752 (1960). The Supreme Court agreed. The search-incident-to-arrest doctrine authorizes police to search a vehicle only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of arrest. *Arizona v. Gant*, 556 U.S. at 344.

When Taylor was arrested, he was placed in handcuffs. Taylor, who was 78-years old, had a seizure and lost consciousness. Surrounded by officers, Taylor's handcuffs were removed and MEMS called to the scene. When he regained consciousness, he was given water, but refused treatment. He was then transported to the jail for booking. During this episode, Taylor's rental vehicle was searched.

The record is not completely clear if Taylor was placed in a squad car or not when the search occurred, but it was impossible for him to have posed any threat to the officers or have access to destructible evidence inside the car. Taylor was immediately arrested and placed in handcuffs. He also had a seizure and lost consciousness. An incapacitated 78-year old could not have gained access to the interior compartment of the rental vehicle. In these circumstances, the search-incident-to-arrest doctrine did not authorize the search of the vehicle.

B. Automobile exception

Adopting Justice Scalia's concurrence in *Thornton v. United States*, 541 U.S. 615 (2004), the *Gant* Court also held that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. at 336. The Eighth Circuit has applied the probable-cause standard to determine whether officers have a reasonable belief that evidence of the offense of arrest will be found in a vehicle. See *United States v. Williams*, 616 F.3d 760, 766-7 (8th Cir. 2010) (applying the probable-cause standard); *United States v. Grooms*, 602 F.3d 939 (8th Cir. 2010) (same). In *Brinegar v. United States*, 338 U.S. 160 (1949), the Supreme Court defined probable cause as "where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief by a man of reasonable caution that a crime is being committed." See also *United States v. Guzman-Tlasca*, 546 F.3d 571 (8th Cir. 2008).

We have found two cases that address probable cause to search a vehicle when the offense of arrest is soliciting sex from a minor, the offense for which Taylor was arrested. Both upheld the searches, but, we contend, the cases are distinguishable.

In *United States v. Zahursky*, 580 F.3d 515 (7th Cir. 2009), Zahursky struck up an online chat with Shelly, the screen name of a fictitious fourteen-year-old girl created by a Secret Service agent investigating internet crimes against children. Over the course of three weeks, Zahursky and Shelly had numerous chat and email conversations almost daily about arranging a time and place to meet for sex. Zahursky told Shelly that he would bring condoms and lubricant to the rendezvous. Zahursky drove from Illinois to Indiana to meet Shelly at the prearranged time and place. When Zahursky arrived, he was arrested for soliciting sex from a minor. His car was searched, and the police found condoms, lubricant, and written directions to the destination.

Zahursky moved to suppress, contending that when the agents began searching his vehicle they lacked probable cause to believe that contraband or evidence of the offense of arrest would be in the vehicle. The Seventh Circuit, however, found ample probable cause, stating,

> [T]he agents knew that Zahursky was the man they wanted. He arrived at Starbucks, the designated meeting place, in the make and color of car that he had described in his chats with Shelly. He was wearing the clothing he had told Shelly he would be wearing, and the agents could observe that his physical appearance fit the one he had described to Shelly. The agents also knew from the internet chats and email messages with Shelly that Zahursky planned to bring condoms and lubricant with him. Thus, they had probable cause, based on Zahursky's own statements, to believe that Zahursky had these items, which would be evidence of a crime, see 18 U.S.C. §2422(b), with him when he met Shelly on June 21.

To further support the finding of probable cause, the Court noted that an element of the offense of arrest was using a means of interstate commerce. Because the officers knew that Zahursky drove from Illinois to Indiana, there was a fair probability that the agents would find some evidence of Zahursky's interstate travel. *Id*. at 523.

Unlike *Zahursky*, the Faulkner County officers did not necessarily know Taylor was the man they wanted. Zahursky told Shelly the make and color of the car he would be driving and described the clothes he would be wearing. Taylor, on the other hand, gave Connor no such information. All the officers knew was that a car entered the parking lot near where Connor was to meet Ben twenty-five minutes before the prearranged time.[1]

Zahursky also told Shelly he would bring condoms and lubricant. These items were clearly relevant to the offense of arrest as proof of an intent to engage in sex with a minor. It was likely, therefore, that evidence specific to the offense of arrest would be found in Zahursky's car. Ben, however, never told Connor he would bring anything to the meeting that could constitute

[1] The Incident Report states that surveillance units at the scene positively identified the driver as a suspect. We've not seen any evidence that corroborates this assertion.

evidence of the crime of soliciting a minor. While he said he would bring beer, he did not mention condoms, lubricant, or any other sex-related items that could constitute proof of soliciting a minor.

Finally, the agents knew that Zahursky would be driving from Illinois to Indiana. It was reasonable, therefore, to believe his car might contain evidence of interstate travel as evidence to support the interstate commerce element of the offense. There were no discussions between Ben and Connor, however, to suggest that Ben was crossing state lines to meet with Connor.

*United States v. Wright*, 2010 U.S. Dist. LEXIS 19676 (E.D. Tenn. 2010), also involved the search of a vehicle incident to an arrest for solicitation of a minor. An officer pretending to be a fourteen-year-old girl named Ginger entered a chat room and began a conversation with a person later identified as Wright. Over the course of two months, the conversations became more sexual, and a rendezvous was discussed. Wright told Ginger he had a laptop, his only computer, and implied he would bring it to the meeting. Ginger asked him to bring the computer so she could show him a disc of nude pictures of her. Wright also sent Ginger a picture of himself. When the time and place of the meeting were settled, Ginger asked Wright to bring a particular shirt, and Wright said he would use his GPS device to find Ginger's arrest (the place of the meeting).

On the day of the rendezvous, officers were in place to make the arrest. The officer who had posed as Ginger, and who received Wright's picture, positively identified Wright. Wright was immediately arrested and, incident to the arrest, officers searched Wright's vehicle and seized the laptop. Wright moved to suppress, arguing that it was not reasonable for the police to believe that any evidence of a crime would be found in the vehicle. The court found otherwise:

> Wells [the officer pretending to be Ginger] knew that when planning the rendezvous, Defendant agreed to bring a particular shirt with him and stated he

> would use his GPS device to find Ginger's address. Ginger also asked whether he would bring his laptop (his only computer), and Wells inferred from their conversation that Defendant would. If there was probable cause to believe that Defendant's vehicle contained even one of these items, any of which would be evidence of Defendant's intent in meeting Ginger, the officers were entitled to search the entire vehicle anywhere the evidence might be found.

It was reasonable to conclude that Wright would bring his laptop and that the computer constituted evidence of Wright's intent to meet with Ginger for sexual purposes -- so he could obtain nude pictures of her. The contents of Wright's GPS device were also relevant to the offense of arrest to confirm that Wright intended to meet Ginger at the prearranged place. Finally, the specific shirt constituted direct evidence that Wright was, in fact, the man the police were looking for.

In Taylor's case, however, the sheriffs did not have near as much information. All they knew was that someone named Ben was supposed to meet Connor in the parking lot by the football field for sex and that he might bring beer. They did not know the make or model of the car Ben was supposed to be driving or a description of clothing he would be wearing. All they saw at the scene was a white car enter the parking lot, exit and drive around, and re-enter. This was twenty-five minutes before the time for the rendezvous.

The beer, of course, is problematic for Taylor's argument. But, when balanced against *Zahursky* and *Wright*, we submit the officers did not have sufficient probable cause to believe any evidence of the offense of arrest would likely be found in the vehicle. In *Zahursky* and *Wright*, the officers had knowledge of the type of car driven and descriptions of clothing and items the defendants would bring to the meeting, items that were direct evidence of the offense of arrest. Here, however, the quantum of facts known to the officers was much less, and, we

contend, insufficient to establish probable cause to believe the vehicle would likely contain evidence of the crime of soliciting a minor.

For these reasons, we ask the Court to order suppression of the items seized from the rental vehicle.

Respectfully submitted by,

J. Blake Hendrix
Arkansas Bar No. 86066
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7123 (direct dial)
bhendrix@fc-lawyers.com

and

Annie Depper
Arkansas Bar No. 2009267
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7144 (direct dial)
adepper@fc-lawyers.com