IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 4:18-CR-00534- DPM |
| | ) | |
| BENNY TAYLOR | ) | |

## RESPONSE IN OPPOSITION TO TAYLOR'S COMBINED MOTION TO TRAVEL AND TO STRIKE HIS CURRENT BOND CONDITIONS

Comes now the United States of America, by and through its attorneys, Cody Hiland, United States Attorney for the Eastern District of Arkansas, and Angela Jegley, Assistant United States Attorney for said district, and responds to Defendant Benny Don Taylor's Motion to Travel, to Amend Conditions of Release, and to Strike Curfew and Electronic Monitoring Conditions As Unconstitutional.

### I.      Factual Background

### II.      Argument

The Adam Walsh Child Protection Safety Act of 2006 ("Adam Walsh Act"), Pub. Law 109-248, 120 Stat. 587, amended 18 U.S.C. § 3142(c), requires a court to impose certain conditions of release in certain sex offenses involving a minor. Particularly, the Adam Walsh Act requires electronic monitoring and other specified conditions, including, in relevant part, that person convicted of sexual abuse:

(iv) abide by specified restrictions on personal associations, place of abode, or travel;

(v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

(vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

(vii) comply with a specified curfew 18 U.S.C. § 3142(c)(1)(B).

Taylor, for the past year, has been out on pre-trial release. As part of the conditions for his release, Taylor is subject to electronic monitoring and is restricted to his residence from 10:00 p.m. to 6:00 a.m. every day.  In his motion to travel and amend conditions of release, he asks the Court to find that the electronic monitoring and curfew release conditions are unconstitutional as applied to him under the Fifth Amendment's Due Process Clause and the Eighth Amendment's Excessive Bail Clause.

Taylor claims that the curfew and electronic monitoring conditions are unconstitutional as applied to him because he is neither a flight risk nor a danger to the community. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be…deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This constitutional provision guarantees that individuals will be afforded both substantive and procedural due process. *United States v. Salerno*, 481 U.S. 739, 746 (1987). Substantive due process precludes the government from engaging in conduct that "shocks the conscience" or inhibits fundamental rights. *Id.* (citations omitted). If the government action that deprives a person of life, liberty, or property, and survives substantive due process scrutiny, it must still adhere to procedural due process. *Id.*

Taylor cites three district court decisions in support of his request to travel and to have his conditions of release modified, all of which found that the Adam Walsh act was unconstitutional as applied. *United States v. Polouizzi*, 697 F. Supp. 2d 381, 395 (E.D.N.Y. 2010); *United States v. Karper*, 847 F. Supp. 2d 350, 364 (N.D.N.Y. 2011); *United States v. Diaz*, No. 17-CR-227 (VEC), 2018 U.S. Dist. LEXIS 182629, at *10 (S.D.N.Y. Oct. 24, 2018). The three decisions, however, are distinguishable from Taylor's case. In *Polouizzi* and *Karper*, the defendants were both charged with possession of child pornography. *Polouizzi*, 697 F. Supp. 2d at 384; *Karper*, 847 F. Supp. 2d

at 353. Additionally, in all three cases, the district courts found that no evidence was presented contending that the defendants were flight risks or dangers to their community. *Polouizzi*, 697 F. Supp. 2d at 390; *Karper*, 847 F. Supp. 2d at 363; *Diaz*, 2018 U.S. Dist. LEXIS 182629, at *8.

Taylor was charged with enticement of a minor to engage in sexual activity for which any person can be charged with a criminal offense, namely internet stalking of a child. The nature of the charges against Taylor give rise to a belief that he poses a greater risk to the community. *See, e.g., United States v. Campbell*, 309 F. Supp. 3d 738, 745 (D.S.D. 2018) (finding that the charged offense was distinguishable from possession child pornography, as charged in *Karper* and *Polouizzi*, and a court could reasonably consider the danger the defendant posed to the community based on the charged offense). Further, unlike the prosecution in *Karper*, *Diaz*, and *Polouizzi*, the United States contends that Taylor is a danger to the community.

## Taylor is a  Danger to the Community

The indictment in this case stems from the fact that Benny Don Taylor submitted an ad to Criag's list seeking sex with young men, including teenage boys. An undercover agent responded to the ad posing as a fifteen-year old boy, "Connor". Attached hereto under seal are various exhibits which were obtained during the investigation, including the Craig's list ad, photographs of evidence at the scene of the arrest and a dump of relevant text messages obtained from Taylor's phone by search warrant.  Exhibit A is a copy of the Craig's list ad. Exhibit B contains 14 pages of text messages between Taylor's phone number ending  in 3500 and "Connor", phone number ending in 5048. The messages cover the time frame of August 24, 2017 through a time on August 27, 2017.  It is clear from the messages that Taylor believed that he was communicating with a 15 year old boy and there are explicit discussions about pictures of male genitalia of the two, explicit discussions of sexual activity that was being sought including

anal sex and the use of lubricant for that purpose. Taylor also disclosed that he had had sex with a sixteen year old who was similar to "Connor". Government's Exhibit C is an exhibit showing that Taylor was going to meet "Connor" at 2300 Prince Street at Conway High School on August 27 about 30 minutes before the scheduled meet.

Government's Exhibits D, E and F are copies of text messages between Taylor and other males that took place from July 7, 2017 through some time on August 27, 2017 when he was arrested.  Exhibit D is a seven-page showing texts between Taylor's phone ending in 3500 and a young male who was not with law enforcement named "Josh" with phone number ending in 0422 that took place from August  23, 2019 through some time on August 27, 2017. The conversations in these texts are similar to those with "Connor" including whether it would be painful to have anal sex, the exchange of photos showing male genitalia, and other explicit discussion of sexual activity between the two. On page 5 of the exhibit, the other male told Taylor at about 9:45 a.m. that he was "in class." On following pages, Taylor and the other male discussed that the male would have to watch his 13-year old brother and conversation ensued about whether the brother would join Taylor and the other male for sexual activity. Taylor wanted the male to take a picture of the thirteen-year old's penis. On page 7 of the exhibit, Taylor asked if the other male liked beer or wine.

Exhibit E is a ten-page exhibit of texts between Taylor's phone ending in 3500 and two other males with phone number ending in 2326.  These texts took place from July 8, 2017 through August 26, 2017.  These messages share common themes with the other Government Exhibits including explicit discussions of oral and anal sex between the two, sexual experiences with other males, etc. Taylor disclosed that he was "[w]idowed and totally bi[sexual]. See page 1. On page 9 of the exhibit, Taylor offered that he liked to "see [a penis] in silk and lace." Girl's

silk panties."  Exhibit F is a one-page exhibit including texts between Taylor's phone ending in 3500 and another male whose phone ended in 2481.  In the texts, Taylor rejected the other male, saying "I honestly am wanting a much youger friend and slim, even sissy looking." He went on to say that he was looking for a "boyish type'

Exhibit G is a photograph of Taylor on the Conway High School parking lot where he was apprehended on August 27, 2017 expecting to meet with "Connor". Exhibit H is a photograph of a piece of paper with handwritten notes found in the console area of the vehicle which appears to be some sort of calendar or schedule to meet other males.  It includes the name of "Connor" with the figure 15 circled below his name and the address and directions to the meet at the football field along with the phone number ending in 5048.  The  exhibit also includes the name of Josh with phone ending in 0422 and the figure 15 circled below it as well as other males ages 18 and 40.

Exhibit I is a photograph of the vehicle Taylor was driving prior to his arrest.  Officers recovered three pairs of women's panties, a container of lubricant and a computer shown in the picture. The vehicle which had a Texas license plate was a rental car. Exhibit J shows that the computer shown in the previous exhibit had a screen saver with Taylor's name. Exhibit K is a photograph of beer in an ice cooler which was found on the passenger's side of the back seat of the vehicle shown in Exhibit I.

The items found in Taylor's rented vehicle at the time of his arrest as shown in Exhibits G through K are consistent with Taylor's discussions with the two under-age males, "Connor" and "Josh" as  well as his discussions with other males about Taylor's sexual preferences and proposed activities as shown by Government's Exhibits A through F.

The foregoing evidence shows that Taylor was not simply looking at pornographic pictures of under-age males or fantasizing about the prospect of having sex with them, but that he fully intended to commit sexual acts with them.  Thus, as noted previously, the cases cited by Taylor are not on point on these facts.

The government has a legitimate, compelling interest in community safety and this interest can outweigh an individual's interest in being free from electronic monitoring and curfew. *Salerno*, 481 U.S. at 748-51. Particularly, the government's interest in "protect[ing] children from sexual attacks" is a legitimate and compelling interest. *Osborne v. Ohio*, 495 U.S. 103, 109 (1990) ("It is evident beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling."); *United States v. Stephens*, 594 F.3d 1033, 1041 (Smith, J., concurring) ("[t]he government has a significant interest in ensuring the safety of the community…specifically in protecting children from being victimized by those who commit child [sex] related offenses"). The purpose of the Adam Walsh Act—to protect children—should be given great weight. *Stephens*, 594 F.3d at 1041 (Smith, J., concurring). Considering the dangers that Taylor poses to the community, his conditions of electronic monitoring and curfew are rationally related to the government's interest in protecting the community, particularly children. Further, Taylor's interest in travel and being free from his conditions of curfew and electronic monitoring are substantially outweighed by the government's interest in protecting the community. Taylor's conditions of release are not unconstitutional as applied and should not be amended.

Respectfully submitted,

CODY HILAND
United States Attorney

By: ANGELA JEGLEY
Bar Number 79100
Assistant U.S. Attorney
P.O. Box 1229
Little Rock, AR  72203
(501) 340-2600
Angela.Jegley@usdoj.gov