# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:18CR00534 DPM |
| | ) | |
| BENNY DON TAYLOR | ) | |

## MOTION TO SUPPRESS EVIDENCE

Taylor moves to suppress all data obtained from searches of his cell phone pursuant to two search warrants and all data obtained from a search of his laptop computer pursuant to a third warrant. The first warrant failed to particularly describe the thing to be seized and searched; the second and thirds warrants resulted in unreasonable seizures, and; all warrants were overbroad.

I.     Facts

On August 27, 2017, Taylor was arrested by the Faulkner County Sheriff's Office and charged with Internet Stalking of a Child in violation of Ark. Code Ann. §5-27-306. A cell phone and laptop were seized from Taylor's vehicle.[1] Over a year later, on October 4, 2018, an indictment charged Taylor with one count of attempting to persuade, induce, entice, and coerce a minor to engage in any sexual activity for which the person can be charged with a criminal offense, namely the state offense of Internet Stalking of a Child, in violation of 18 U.S.C. §2422(b). Ten months later, on August 26, 2019, a search warrant was issued for the cell phone seized from Taylor's vehicle ("First Warrant"). The face of the warrant listed the person or property to be searched as "See Attachment A." The description of the person or property to be seized was described as "See

---

[1] It is unknown if the state searched the cell phone and laptop. A search warrant was not produced. If the state searched the items, the search was unlawful under *Riley v. California*, 573 U.S. 373 (2014), which generally requires a search warrant to search electronic devices. The testimony of the undercover officer, Chad Meli, would be relevant to determine if a warrantless search occurred.

1

Attachment B." The affidavit in support of the warrant set out as probable cause the alleged facts that led to Taylor's arrest. The contents of the cell phone were imaged, and the government later searched the data.

Over the next many months, the case changed hands within the U.S. Attorney's Office several times. On October 26, 2021, during a review of discovery at the U.S. Attorney's Office, the parties realized that the First Warrant was not produced in discovery. The government's current attorneys swiftly located the First Warrant and its affidavit, and the documents were produced to the defense. Attachments A and B to the First Warrant, however, were not attached to the warrant and, apparently, don't exist.

On November 4, 2021, the government applied for a second search warrant ("Second Warrant"). The warrant, and the application in support, mirrored the First Warrant (with the exception of the date and time issued). Attached to the warrant were Attachment A describing the thing to be searched (the cell phone located in Taylor's vehicle) and Attachment B describing the things to be seized from the phone.

On November 16, 2021, a third warrant was issued. It authorized the search of a laptop computer seized from Taylor's vehicle on August 24, 2017 ("Laptop Warrant"). The warrant, and the application for the warrant, mirrored the First and Second Warrant, except for the dates and the property to be searched.

II. First Warrant

A. Particularity

The Warrant Clause of the Fourth Amendment states, "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *U.S. Const., amend. IV*. The purpose of the

particularity requirement is to protect against the "wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (the particularity requirement "prevents the seizure of one thing under a warrant describing another"). The warrant must describe both the places to be searched and the things to be seized with sufficient particularity so as to leave "nothing . . . to the discretion of the officer executing the warrant." *Andresen v. Maryland*, 427 U.S. at 480.

In *Groh v. Ramirez*, 540 U.S. 551 (2004), a search warrant was issued to search the defendant's farm for firearms. The warrant, however, failed to describe the things to be seized. The application for the warrant described both the place to be searched and the things to be seized with particularity, but the warrant did not incorporate by reference the itemized list in the application.

The Court held that the warrant was plainly invalid. The Warrant Clause has four requirements: (1) the warrant must be based on probable cause; (2) it must be supported by oath or affirmation; (3) it must particularly describe the place to be searched; and (4) it must particularly describe the person or things to be seized. *Id*. at 557. The warrant satisfied the first three requirements, but it failed to particularly describe the things to be seized. Because the warrant did not adequately describe the things to be seized, "the warrant was so obviously deficient that we must regard the search as 'warrantless,'" *id.* at 558, and the search, therefore, violated the Fourth Amendment.

In this case, the First Warrant failed to particularly the describe both the property to be searched and the things to be seized. The space on the face of the warrant designed to describe the property to be searched said only, "See Attachment A." The space to describe the property to be

3

seized said only, "See Attachment B." The Warrant, however, did not contain either Attachment A or B. The Warrant, therefore, failed the Fourth Amendment's particularity requirement.

The petitioner in *Groh* argued that, despite the warrant's lack of particularity, the warrant satisfied the Fourth Amendment because the underlying application for the warrant adequately described the things to be seized. The Court rejected this argument. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id*. at 557. The Court recognized that Courts of Appeals have held that a court may construe a warrant with reference to supporting documents if the warrant contains appropriate words of incorporation and if the supporting documents accompany the warrant. *Id*. at 557-58.

Here, the First Warrant referenced Attachments A and B. Even if this language is sufficient to incorporate Attachments A and B (a point we do not concede), the attachments did not accompany the warrant. They just don't exist.

The First Warrant failed two of the Clause's four requirements: it failed to describe with particularity the property to be searched and failed to particularly describe the things to be seized. The evidence gained from the seizure and search of the cell phone, therefore, should be suppressed.

III.    Second Search Warrant/ Laptop Warrant

A second search warrant ("Second Warrant") issued on November 4, 2021, 26 months after the first. Like the First Warrant, it referenced Attachments A and B, but this time the Attachments were included with the warrant. Attachment A described the property to be searched (the cell phone seized during Taylor's arrest on August 24, 2017). Attachment B described the things to be seized:

- All records on the electronic devise described in Attachment A that relate to violation of Title 18, United States Code, Sections 2422(b) [attempted enticement of a minor] and involve Taylor, including:

- Evidence of user attribution showing who used the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

- All documents, including all temporary and permanent electronic files, records, and photographs (including, but not limited to, JPG, GIF, TIF, AVI, WAV, and MPEG files) which contain, attach, or describe child exploitation of a minor;

- User-attribution data to include data that reveals who used or controlled the device at or around the time that data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded or printed. User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the Subject Phone, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata;

- Any and all internet browser history, to include search terms; and

- Messages between Taylor and others discussing child exploitation.

The application for the Second Warrant mirrored the first, except to add that a second warrant was sought because the First Warrant failed to include the attachments. In other words, the Second Warrant sought to cure the defect in the First Warrant. After the Second Warrant was issued, the government simply re-seized and reviewed the data it had previously seized and reviewed.

The Laptop Warrant issued on November 16, 2021. Again, the warrant and its application mirrored the First and Second Warrants, except that it authorized the search of the laptop seized on August 27, 2017.

A.     Reasonableness

Typically, a warrant must be executed within 14 days of it being issued. *See Fed. R. Crim. Pro. 41(e)(2)(A)(ii)*. Rule 41 recognizes, however, the practicalities of searching electronic data and authorizes a two-step process. Rule 41(e)(2)(B) states:

> A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless

5

> otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

The 2009 Amendments to Rule 41 explain the need for a two-step approach for searching electronic media:

> Computers and other electronic media commonly contain such a large amount of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location. This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant.

*See Fed. R. Crim. Pro. 41, 2009 Amendments.*

"The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (internal citation omitted). Current law does not establish how long the government can retain electronic data before it completes its search. *See United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D. N.Y. 2012) ("The Court recognizes that under current law there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence seized falls within the scope of the warrant.").

In *United States v. Nasher-Alneam*, 399 F. Supp.3d 579 (S.D. W.V. 2019), a search warrant was obtained to search, among other things, the defendant's electronic devices. The devices were seized, their contents imaged, and the data later searched. The defendant was indicted and proceeded to trial, but the jury hung and a mistrial declared. Approximately 15 months after the mistrial, the government again searched the imaged data. The second search revealed evidence of other crimes, and a superseding indictment issued. The defendant moves to suppress the evidence.

The issue before the court was whether the second search of the data was reasonable. The court held it was not. "Although there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence falls within a scope of a warrant, courts have recognized that the Fourth Amendment requires the government to complete its review, i.e., execute the warrant, within a reasonable period of time." (internal quotations omitted.). The court held that the 15-month delay from the seizure of the devices to the second review of the data was not reasonable and, therefore, violated the Fourth Amendment.

Here, the cell phone and laptop were seized without a warrant on August 27, 2017. The First Warrant was issued two years later, on August 26, 2019, and the government subsequently reviewed the data. The data was again reviewed shortly after the Second Warrant issued on November 4, 2021. The second review occurred approximately 26 months after the cell phone was seized under the First Warrant (and over four years after the warrantless seizure). The *Nasher-Alneam* Court held that a 15-month delay was unreasonable and required suppression of the data. Here, the subsequent review of the data on the cell phone occurred 26 months after the phone was seized under the First Warrant. The 26-month delay was unreasonable and violated the Fourth Amendment. The data obtained should be suppressed.

IV. Overbroad Warrants

To summarize the probable cause sections of all three affidavits: Officer Chad Meli located a sexually explicit ad on Craigslist seeking sexual contact with a young college or high school aged boy; Meli responded to the ad by email posing as 15-year-old "Connor;" "Ben" responded and sent a sexually explicit photograph; switching to text messages, "Ben" and "Connor" engaged in sexually explicit conversations; the parties agreed to meet at Conway High School; Taylor

arrived at the high school at the appointed time and was arrested; items seized from the vehicle included a cell phone and a laptop.

The Second Warrant and the Laptop Warrant sought to search the devices for evidence of a violation of 18 U.S.C. §2422(b). The items to be seized, however, went beyond evidence to support the allegation. For instance, the warrants sought "logs, phonebooks, saved usernames and passwords, documents, and browsing history;" all documents in any format, including "JPG, GIF, TIF, AVI, WAV and MPEG files;" "[u]ser attribution data to include . . . registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the Subject Phone, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata;" "[a]ny and all internet history, to include search terms;" and [m]essages between Taylor and others discussing child exploitation."

The Fourth Amendment prohibits General Warrants. "The problem posed by the general warrant is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. at 480. The Fourth Amendment, the Court explained in *Andresen*,

> addresses the problem by requiring a particular description of the thing to be seized. This requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Id*. (internal quotations and citations omitted).

*In re Search of a Nextel Cellular Tel.*, 2014 U.S. Dist. LEXIS 88215 (D. Kan. 2014), involved an application to search the contents of a suspect's cell phone for evidence of drug trafficking. The court refused to issue the warrant finding that the affidavit failed to particularly describe the things the officers wanted to seize. Searching the entire phone, the court said,

is akin to saying that the government will search a residence by looking in all the rooms of the house and opening any desk drawers and cabinets to see what's inside, even though the government is looking for a stolen lawnmower. Put another way, just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe drug trafficking communications may be found in a phone's mail application will not support the search of the phone's Angry Birds application.

To avoid a general exploratory search, limitations must exist "to maintain the privacy of materials that are intermingled with seizable materials, and to avoid turning a limited search for particular information into a general search . . ." *In re Cellular Tels.*, 2014 U.S. Dist. LEXIS 182165 (D. Kan. 2014). The best way to avoid a general search of a digital device is for the affidavit to set out facts particularly describing the specific areas of the device to be searched. See *In re Application for Search Warrant*, 2012 Vt. 102 (particularity may be achieved through specification of how a search will be conducted. By limiting the authorization to specific areas and specific things, the particularity requirement ensures that the search will be carefully tailored to its justifications and will not become a wide-ranging, exploratory search that the Fourth Amendment prohibits).

The items the warrants authorized officers to seize on the cell phone and laptop were not sufficiently limited to the facts alleged as probable cause. The probable cause sections were limited to the placement of the ad, to the email and text conversations between Ben and Connor, and a sexually explicit photograph. The warrant, however, authorized a much broader search. It authorized the seizure of logs, phonebooks, documents, and browser history; address books, cookies, calendars, instant messages; internet search history; and messages between Taylor and others. It did not limit the places on the phone or computer to be searched that could contain the evidence supported by the probable cause section. That evidence would have been found in the email, text, and photo applications. The warrants, however, allowed a much broader search for

9

which probable cause did not exist. The warrants, therefore, were not sufficiently tailored to the probable cause and constituted General Warrants. The evidence obtained should be suppressed.

V.  Good Faith Exception

The "good faith" exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984), cannot save these searches. The *Leon* Court identified five circumstances in which a warrant cannot reasonably be relied on. One applies here: a warrant so facially deficient that no reasonable officer would believe it to be valid. *Id.* at 923 (warrant facially deficient when it does not particularize the place to be searched or the items to be seized).

The First Warrant failed to describe the particular property to be searched or the particular things to be seized. The Attachments were apparently not attached and cannot be found. The Second Warrant and the Laptop Warrant were facially deficient. The Second Warrant issued 26 months after the First Warrant to cure the particularity defect in the first. It was also issued four years after the cell phone was seized. The Laptop Warrant was issued even later. There is no reason, and it was unreasonable, to seek to search the laptop four years after it was seized. The purpose of the seize-first-search-second process of Rule 41 is to allow law enforcement sufficient time to review electronic data because electronic devices contain large amounts of data. It did not take the government two years (or four years) to review the data on Taylor's cell phone and laptop. The volume of data was not that great. The government just did not get around to it.

For these reasons, Taylor moves the Court to suppress all evidence obtained from the three search warrants.

Respectfully submitted by,

J. Blake Hendrix
Arkansas Bar No. 86066
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7123 (direct dial)
bhendrix@fc-lawyers.com

Annie Depper
Arkansas Bar No. 2009267
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7144 (direct dial)
adepper@fc-lawyers.com